**TAYLOR, COLICCHIO & SILVERMAN, LLP**
502 Carnegie Center, Suite 103
Princeton, New Jersey 08540
(609) 987-0022
Regan C. Kenyon Jr., Esq.
Attorneys for The Community Preservation Corporation

| | |
|---|---|
| In the Matter of: | UNITED STATES BANKRUPTCY COURT |
| | FOR THE DISTRICT OF NEW JERSEY |
| MYG Management LLC | |
| | Chapter 11 |
| | |
| Debtor. | Petition No. 08-27632-RTL |
| | |
| | **MEMORANDUM OF LAW: MOTION** |
| | **TO DISMISS OR CONVERT DEBTOR'S** |
| | **CHAPTER 11 PETITION OR IN THE** |
| | **ALTERNTIVE RELIEF FROM** |
| | **AUTOMATIC STAY AS APPLIES TO THE** |
| | **RENTS FROM DEBTOR'S PROPERTIES** |

The Community Preservation Corporation ("CPC"), by and through the undersigned, hereby moves before this Court, pursuant to 11 U.S.C. § 362(d), for: (i) dismissal of Debtor's Chapter 11 Petition or conversion of Debtor's Petition to a Chapter 7 filing; or in the alternative (ii) relief from the automatic stay imposed by 11 U.S.C. § 362(a) so that the previously appointed rent receiver may continue to collect rents on behalf of CPC and declaration that those rents are not part of the Debtor's Bankruptcy Estate.  In support thereof, CPC respectfully represents as follows:

<u>**BRIEF STATEMENT**</u>

This Court should dismiss or convert the Petition, or in the alternative grant CPC relief because Debtor MYG Management LLC ("MYG") does not have a present title interest in the rents from its properties that are encumbered by mortgages liens in CPC's favor.  MYG, through

1

an absolute assignment in favor of CPC, assigned all its interests to those rents to CPC as part of the loan transaction between the parties. That cannot be disputed. Without any interest in the rents, the rents are not and will never be part of MYG's Bankruptcy Estate. Therefore, by MYG's own admission, MYG cannot confirm a successful reorganization plan, and the Petition should be dismissed or converted. Even if the Court finds that dismissal and/or conversion is not warranted, it should grant CPC relief from the automatic stay as applies to the rents from the properties in question so that the court-appointed receiver can continue to collect rents because MYG has no interest in those rents, having assigned all rights and interests in the rents to CPC.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

MYG is a real estate management company owned and operated by Max Edelkopf. MYG is the owner of nineteen (19) properties located in the City of Trenton, State of New Jersey that are encumbered by CPC's first-position mortgage lien. (A copy of the relevant Mortgage, Assignment of Leases and Rents and Security Agreement is attached as Exhibit A to the Certification of Regan C. Kenyon, Jr.).

CPC is a multifamily housing lender and a secured creditor of the Debtor by virtue of those mortgage liens on the above-mentioned properties by way of the following facts.

## THE APPLICABLE LOAN

On January 31, 2006, MYG executed a Mortgage Note in the principal amount of $4,766,400.00 with interest on the unpaid principal balance at a rate equal to 6.37% per annum to

2

be computed from the date thereof, payable in monthly interest installments in CPC's favor (the "Note"). To secure payment of the Note, on January 31, 2006, MYG executed a Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"). The mortgaged premises are a series of commercial properties located in Trenton, New Jersey. By way of a separate Assignment of Leases and Rents (the "Assignment"), MYG also absolutely assigned all title in the rents and leases from those properties to CPC. (Collectively, these documents are the "Loan Documents"). (A copy of the Assignment is attached as Exhibit B to the Certification of Regan C. Kenyon Jr. attached hereto).

The Assignment granted title to the rents to CPC. (See Exhibit B to the Certification of Regan C. Kenyon). Paragraph 1 of the Assignment states:

> [MYG] hereby grants, transfers, bargains, sells, assigns, conveys and sets over unto [CPC], its successors and assigns, from and after the date hereof (including any period allowed by law for redemption after any foreclosure or other sale), all right, title and interest of [MYG] in and to (i) all leases, subleases, licenses, concessions, management and other occupancy or operating agreements which now or may hereafter affect the Premises or any part or parts thereof and all guarantees, modifications, renewals and extensions thereof (collectively, the **"Leases"**), (ii) all documents and instruments made or hereafter made in respect of the Leases, and (iii) all or the rents, income, revenues, issues and profits, due and to become due or to which [MYG] is now or may hereafter become entitled, arising out of the Leases of the Premises of any part or parts thereof (collectively, the **"Profits"**).

Through Paragraph 14 of the Assignment, CPC licensed its right to collect the rents from the properties back to MYG: "So long as no Event of Default under the Mortgage, or any of them (if more than one) or this Assignment has occurred and is continuing, [CPC] hereby gives [MYG] a license to collect all the Profits, and to retain, use and enjoy same . . . ." By virtue of that same paragraph, CPC also granted MYG a contingent future interest in the title to the rents. Title to the rents reverts back to MYG when:

> (a) all sums due and payable under the Mortgage shall have been fully paid and satisfied, together with any and all other sums which may become due and owning under this Assignment and (b) all other obligations of [MYG] under the

3

> Mortgage, this Assignment and any other document executed in connection therewith are satisfied.

If these requirements are satisfied, Paragraph 14 provides that "the authority and powers herein granted by [MYG] to [CPC] shall cease and terminate." The Assignment also provided that the license to the rents CPC granted to MYG would "be revoked by [CPC] upon the occurrence of a default under the Mortgage, or any of them (if more than one) which remains uncured beyond the expiration of any applicable grace period . . . ." The Mortgage itself contained similar assignment language. (See Section 2.14. <u>Leases; Assignments of Rents</u> of Exhibit A to the Certification of Regan C. Kenyon Jr.).

Through the execution of these documents, MYG made an absolute assignment of title to the rents to CPC in exchange for a license to those rents and a contingent future interest in title to the rents. That future interest was contingent upon MYG avoiding default under the Loan Documents, which did not happen. Through these same documents, MYG also agreed that its future interest in the rents, if any, would be extinguished upon default, which has occured. As such, MYG has no rights to these rents.

## DEBTOR'S DEFAULT

On December 11, 2006, and each month thereafter, installments of principal and interest came due on the Note and Mortgage. (A copy of the relevant Verified State Court Complaint is attached as Exhibit C to the Certification of Regan C. Kenyon, Jr.; see ¶ 44 therein). MYG never made a payment. (See Exhibit C, ¶¶ 44-48, to the Certification of Regan C. Kenyon Jr.). In addition, escrow payments, default interest and late charges have never been paid. That default by MYG triggered Paragraph 14 of the Assignment, thereby cutting off any future interest MYG may have possessed in the rent.

## COURT PROCEEDINGS

On April 24, 2008, CPC filed a state court foreclosure suit, The Community Preservation Corporation v. MYG Management, et al., Docket No. F-15840-08 (2008), in the Superior Court of New Jersey, Mercer County, Chancery Division, with regard to MYG's default under the Revolver Loan. (See Exhibit C to the Certification of Regan C. Kenyon Jr.). The State Court in that action ordered that the properties be turned over to a rent receiver for safe keeping and subsequently entered Default against MYG. (A copy of the relevant Order Appointing the Rent Receiver is attached as Exhibit D to the Certification of Regan C. Kenyon Jr.).

On September 16, 2008, Debtor voluntarily petitioned this Court for relief under Chapter 11 of the Bankruptcy Code. Debtor's Petition includes profits from the rents as part of the Bankruptcy Estate's assets. (See Debtor's Petition, Schedule B). On September 30, 2008, Debtor filed, with this Court, a motion to remove the court-appointed receiver, as part of its efforts to include the rent from the properties as part of the Bankruptcy Estate. (See Debtor's Motion to Remove Receiver from Property of the Estate, ¶ 4). Specifically, Debtor states in its motion that "Debtor must have authority to use the cash collateral in the form of rent . . . in order to continue the operation and rehabilitation of its business . . ." (See Debtor's Motion to Remove Receiver from Property of the Estate, ¶ 4), and also that "in order for Debtor to have a successful reorganization it is imperative that it be given immediate control over all property of the estate, including but not limited to all cash received . . . ." (See Debtor's Motion to Remove Receiver from Property of the Estate, ¶ 9). However, MYG has no rights to these rents as a matter of law.

## LEGAL ARGUMENT

Under New Jersey law, MYG, by virtue of (i) the execution of an Assignment in favor of CPC and (ii) its default under the Loan Documents, has no right to title in the rents from the

5

relevant properties. Since it has no ownership rights to the rents, MYG may not count the rents as cash collateral property of the Bankruptcy Estate. Those rents are the very basis for MYG's proposed reorganization plan. By MYG's own admission, a successful reorganization is impossible without those rents. Because MYG has no right to or in the rents, and because those rents cannot be part of any reorganization plan, MYG cannot confirm a plan, and accordingly, MYG's Chapter 11 Petition should be dismissed or converted to a Chapter 7 liquidation. Even if the Court finds that dismissal or conversion is not proper here, the Court should terminate the stay imposed by the Bankruptcy Code as it applies to those rents because MYG has no right or interest in the rents, and accordingly they cannot be subject to the Code's automatic stay.

MYG contends that the rents at issue in this case constitute part of MYG's Bankruptcy Estate. (See Debtor's Petition, Schedule B; and Debtor's Motion to Remove the Receiver from the Property of the Estate). With that contention, MYG necessarily assumes that as property of the estate, the rents are protected by the Bankruptcy Code's automatic stay (11 U.S.C. § 362(a)(1)). (See Debtor's Motion to Remove the Receiver from the Property of the Estate, ¶ 6).

Here, however, the rents are not and cannot be property of the Estate. By virtue of the relevant Assignment, title to the rents vested in CPC. Furthermore, by virtue of MYG's default under the relevant loan documents, any contingent future interest of MYG to the rents was extinguished at the time of default.

The Third Circuit addressed this exact issue in In re Jason Realty, 59 F. 3d 423 (3d Cir. 1995), and held that if a debtor has executed an absolute assignment of rents in favor of a creditor, those rents are not part of the bankruptcy estate because the debtor has no interest in title to the rents and could not use them as part of any reorganization plan. Id. at 28.

6

In re Jason Realty controls here.  MYG and CPC entered into the Assignment as part of the loan transaction.  The Assignment "grants, transfers, bargains, sells, assigns, conveys and sets over" to CPC "all right, title and interest" of MYG in the rents.  (See Exhibit B, ¶ 1, of the Certification of Regan C. Kenyon Jr.).  Furthermore, upon the occurrence of default by MYG, that transfer of title becomes final and absolute and forecloses any future interest of MYG in the rents.  (See Exhibit B, ¶ 14, of the Certification of Regan C. Kenyon Jr.).  The assignment here, like the one in In re Jason Realty, is quintessentially absolute.  Therefore, MYG has no interest or equity in the rents, and they cannot be used as part of a reorganization.  They are not property of the Estate and CPC's motion should be granted with no further delay.

The Court should dismiss or convert MYG's Petition because MYG has admitted that it cannot confirm a successful reorganization plan without the rents at issue here.  According to 11 U.S.C. § 1112(b)(1), the Court must dismiss or convert a Chapter 11 petition if a creditor establishes cause.  One event constituting "for cause" is the debtor's failure to confirm a plan. 11 U.S.C. § 1112(b)(4)(J).  Here, Debtor states in its motion that "Debtor must have authority to use the cash collateral in the form of rent . . . in order to continue the operation and rehabilitation of its business . . ." (See Debtor's Motion to Remove Receiver from Property of the Estate, ¶ 4), and also that "in order for Debtor to have a successful reorganization it is imperative that it be given immediate control over all property of the estate, including but not limited to all cash received . . . ." (See Debtor's Motion to Remove Receiver from Property of the Estate, ¶ 9).  The rents at issue do not fall under the purview of 11 U.S.C. § 541(a)(1), and as such are not property of the estate.  Because the rents are not property of the estate, MYG may not rely upon them in its plan for a successful reorganization.  By MYG's own admission, a successful reorganization,

then, is not possible. Accordingly, the Court should dismiss MYG's Chapter 11 filing, or convert it to a Chapter 7 liquidation.

If the Court does not dismiss or convert MYG's Petition, at a minimum it should lift the stay against the rents from the properties encumbered by mortgage liens in CPC's favor. Those rents are not part of the Bankruptcy Estate, and thus, the stay is inapplicable to them.

### RELIEF DESIRED

Accordingly, and for the reasons set forth heretofore, CPC respectfully requests the Court enter an Order (i) dismissing MYG's Chapter 11 Petition; or (ii) converting it to a Chapter 7 liquidation; or in the alternative (ii) granting CPC relief from the automatic stay imposed by 11 U.S.C. § 362(a) so that the previously appointed rent receiver may continue to collect rents on behalf of CPC, and (iv) declaring that those rents are not part of the MYG's Bankruptcy Estate.

Dated: November 17, 2008                                             /s/
      Princeton, NJ                                        Regan C. Kenyon Jr.

8